**TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO LOCAL 553, Plaintiff,**

v.

**EASTERN AIRLINES, INC., Defendant.**

**No. 86–1569–Civ.**

United States District Court, S.D. Florida.

Nov. 29, 1988.

Alan E. Greenfield, P.A., Coral Gables, Fla. by Alan E. Greenfield and Linda J. Ehrlich, for plaintiff.

Smith, Gambrell & Russell, Atlanta, Ga. by William W. Gardner, Blackwell, Walker, Fascell & Hoehl, Miami, Fla. by Francis A. Anania, for defendant.

## ORDER OF FINAL SUMMARY JUDGMENT

HOEVELER, District Judge.

THIS CAUSE came before the court on the defendant's motion for summary judgment and plaintiff's corresponding *ore tenus* cross-motion for summary judgment on May 9, 1988 and November 15, 1988. The court has considered the motions and has heard oral arguments of counsel. For reasons set forth herein, and being otherwise duly advised in the premises, the court concludes that the defendant's motion for summary judgment should be denied, and the plaintiff's motion for summary judgment should be granted.

### Nature of the case

This action arose over a dispute between the Transport Workers Union, AFL–CIO Local 553 ("TWU"), representing Eastern Airline's flight attendants, and Eastern Airlines ("EAL") concerning the flight attendants' attendance program. TWU filed suit on July 18, 1986 seeking an injunction, compensatory and punitive damages and attorney's fees, as well as "other relief" based on EAL's alleged failure to implement the agreed-upon formation of a joint committee to produce a revised attendance program.

### Background

Absenteeism has been the subject of collective bargaining between the parties since 1966. Defendant's Memorandum in Support of its Motion for Summary Judgment at 5. Before 1982, the unwritten attendance program consisted of a decentralized system of progressive discipline by local supervisors. *Id.* In February, 1982 EAL implemented a written program. *Id.* at 6. Thirteen days after this program was announced, TWU filed a grievance against EAL, claiming that the new program added to and deviated from the collective bargaining agreement between the parties. *Id.* at 8. TWU withdrew its grievance when the parties agreed to Document 64, a sideletter to the basic collective bargaining agreement. *Id.* Document 64 provided that a joint committee would be formed to study attendance and develop a new program. Complaint, Exhibit B.

On August 24, 1985 Document 64 was revised to the effect that the joint committee would "structure an Attendance Program comparable to that currently applicable to ground employees." The agreed structure was to be in place no more than 90 days after ratification of the collective bargaining agreement. Complaint, Exhibit C. The collective bargaining agreement was ratified on March 31, 1986. Complaint

at 3. Thus, the new attendance program was to have been in place by July 1, 1986. *Id.* On July 18, 1986, TWU filed its complaint and motions for a temporary restraining order and preliminary injunction.

At a hearing on these motions on July 29, 1986, the parties informed the court that they were continuing to negotiate in order to reach a settlement. Accordingly, the court did not rule on the motions, but ordered the parties to continue negotiating. By October, 1986 the parties agreed on all issues with the exception of the number of occurrences required to trigger disciplinary action. Plaintiff's Reply Memorandum at 2–3.

On January 1, 1987 EAL changed its position dramatically. It announced that any new attendance program would have to be keyed to the new program it had imposed on the groundworkers. EAL bases this requirement on the word "currently" in Document 64, claiming that any change in the groundworkers' attendance program requires the flight attendants to negotiate for a program comparable to the changed program. TWU contends that "currently" referred to the program in effect when Document 64 was revised and agreed upon.

*Discussion*

In light of the motion and cross-motion for summary judgment, the parties agree that there are no disputed issues of material fact and that this case is ripe for summary judgment. EAL bases its motion for summary judgment on its contentions 1) that attendance control is a managerial prerogative; 2) that EAL has bargained in good faith; and 3) that TWU is not entitled to status quo relief. TWU contends, on the contrary, that the court should grant TWU's motion for summary judgment 1) because the attendance program has been the subject of collective bargaining since 1966, it is no longer a managerial prerogative; 2) EAL's sudden shift in strategy and vitiation of prior agreements is bad faith bargaining; and 3) negotiating parties are required to maintain the status quo until an impasse is reached under the Railway La-

bor Act, 45 U.S.C. sections 151–188 (1982 & Supp. IV 1986).

### I. The Act

The Railway Labor Act ("the Act"), 45 U.S.C. sections 151–188 (1982 & Supp. IV 1986) was enacted in order

(1) To avoid any interruption of commerce or to the operation of any carrier engaged therein;

45 U.S.C. section 151a (1982 & Supp. IV 1986).

The general duties envisioned by the act include:

First. Duty of Carriers and employees to settle disputes

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

Second. Consideration of disputes by representatives

All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

45 U.S.C. section 152 (1982 & Supp. IV 1986).

These provisions of the Act were extended to air carriers by amendment of the act, 45 U.S.C. section 181 (1982 & Supp. IV 1986), making these provisions applicable to the instant case.

### A. *Mandatory bargaining vs. managerial prerogative*

■ Section 152 (First) of the Act imposes a legal obligation on management and labor, enforceable in the federal courts, to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions. *Chicago & N.W. Ry. Co. v. United Transp. Un-*

*ion,* 402 U.S. 570, 573, 91 S.Ct. 1731, 1733, 29 L.Ed.2d 187 (1971). The attendance program at issue here concerns workplace rules, and is therefore a subject of mandatory bargaining. Furthermore, employee absenteeism has been the subject of collective bargaining between these parties since 1966. Therefore, EAL cannot now claim that its attendance policy is a managerial prerogative and outside the scope of bargaining.

## B. *The requirement to bargain in good faith*

■ The purpose of the Act is to avoid industrial strife by imposing the obligation to bargain on the authorized representatives of employer and employee. *Brotherhood of Ry. & S.S. Clerks v. Ass'n for the Benefit of Non-Contract Employees,* 380 U.S. 650, 658, 85 S.Ct. 1192, 1196–1197, 14 L.Ed.2d 133 (1965). To this end, the Act imposes a legally enforceable obligation to engage in good faith bargaining. *Chicago & N.W. Ry.,* 402 U.S. at 578–579, 91 S.Ct. at 1735–36. EAL contends that the duty to bargain in good faith is merely a moral exhortation, and that this court can at most send the parties back to the table to bargain in good faith. The Supreme Court vehemently disagreed with a similar argument made by the union in *Chicago & N.W.* There, the Court held that the duty to bargain in good faith was no mere moral exhortation, but was rather a corollary of management's duty to recognize the union. *Id.* at 575, 91 S.Ct. at 1734. Moreover, the duty to bargain in good faith is "enforceable by whatever appropriate means might be developed on a case-by-case basis." *Id.* at 577, 91 S.Ct. at 1735. Thus, requiring the parties to return to the status quo bargaining positions they occupied before January, 1987, is well within the power of the court.

■ EAL contends that a change in factual circumstances permits a party to change its negotiating tactics and still remain within the purview of good faith. It cites *Flight Attendants v. TWA,* 682 F.Supp. 1003 (W.D.Mo.1988) as support for this proposition. There, the court addressed, *inter alia,* the airline's retreat from prior—more favorable—offers, and held that changed conditions justified a hardening of bargaining posture. *Id.* at 1025–26. In *Flight Attendants,* however, the change in factual circumstances that permitted management to change its bargaining strategy was the takeover of TWA by Carl Icahn. *Id.* at 1026. Here, on the other hand, the change in factual circumstances that EAL urges as justification for its change in tactics is a change that management itself originated, its own unilateral change of the IAM attendance policy.[1]

■ An employer's unilateral change in conditions of employment under negotiation is an unfair labor practice under the National Labor Relations Act, 29 U.S.C. section 158(a)(5). *Seattle–First Nat'l Bank v. NLRB,* 638 F.2d 1221 (9th Cir. 1981). By arguing that its unilateral change in attendance rules was mere change in bargaining strategy and not bad faith, in effect EAL is claiming that the union should have known that the parties were bargaining over a shifting target the size of which was entirely within the control of management.

In order for bargaining to meet the good faith requirement, it must have more than the mere appearance of bargaining. *Japan Air Lines v. Int'l Ass'n of Machinists,* 389 F.Supp. 27 (S.D.N.Y.1975), *aff'd* 538 F.2d 46 (2d Cir.1976). EAL's refusal to move from its 1982 position and its position that the attendance program is entirely within management's prerogative does not meet this test. Therefore, summary judgment against EAL and for TWU is proper where EAL failed to meet its obligation to bargain in good faith.

## C. *Maintenance of the status quo*

■ The RLA also requires that labor and management maintain the status quo

---

**1.** The issue of whether EAL had the right to make this unilateral change is currently the subject of arbitration.

rates of pay, rules and working conditions until an agreement is reached or until a party achieves the right to self-help under the Act. *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 149, 90 S.Ct. 294, 298–299, 24 L.Ed.2d 325 (1969). This requirement is similar to the NLRA prohibition of unilateral action regarding the subjects of negotiation. EAL claims that the status quo in this case is the 1982 attendance rules. The union claims that the status quo is the 1986 policy implemented by the company before its January, 1987 announcement that the flight attendants would have to abide by the same strictures management had unilaterally imposed on the IAM. Because the union withdrew its grievance pertaining to the 1982 attendance program in reliance on the negotiated agreement reflected in Document 64, and because the parties had reached substantial agreement on all issues except the number of occurrences triggering disciplinary action prior to the January 1987 announcement, this court agrees with the union in this regard.

*Conclusion*

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that

1) Defendant's motion for summary judgment is DENIED.

2) Plaintiff's motion for summary judgment is GRANTED. Accordingly, the parties will return to their respective bargaining positions as of December, 1986. TWU members who have been disciplined since January 1, 1987 will be reevaluated to determine whether they would have been disciplined under the status quo of 1986. The parties will submit the issue of the number of occurrences necessary to trigger disciplinary action to arbitration.

3) All other pending motions are denied as MOOT.

DONE AND ORDERED.